# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| AMY McKENZIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | 1:21-CV-00267-CG-B |
| ) | |
| BALDWIN COUNTY BOARD OF ) | |
| EDUCATION, EDDIE TYLER, in ) | |
| his Official Capacity as Superintendent ) | |
| of the Baldwin County Board of ) | |
| Education, JENNIFER SINCLAIR, in ) | |
| her Individual Capacity and MICHAEL ) | |
| JOHNSON, ANDREA LINDSEY, TONY ) | |
| MYRICK, JANAY DAWSON, NORMA ) | |
| LYNCH, CECIL CHRISTENBERRY, ) | |
| and SHANNON CAULEY, as Board ) | |
| Members of the Baldwin County Board ) | |
| of Education, ) | |
| ) | |
| Defendants. ) | |

## REPORT OF PARTIES' PLANNING MEETING

_____

Pursuant to Fed.R.Civ.P. 26(f), a meeting was held on December 30, 2021 via telephone conference and follow up correspondence, and was attended by:

- Mary Pilcher and Clint Daughtrey for Plaintiff;

- Sarah Young and Carl Johnson for Defendants Baldwin County Board of Education, Eddie Tyler, Michael Johnson, Andrea Lindsey, Tony

      Myrick, JaNay Dawson, Norma Lynch, Cecil Christenberry, Shannon Cauley, and Robert Stuart in their official capacities;

- John Marsh for Defendants Eddie Tyler and Jennifer Sinclair.

The parties request a conference with the court before entry of the scheduling order.

    1.    (a)  Plaintiff's brief narrative statement of the facts and the cause of action stated in each count:

      The plaintiff, Amy McKenzie, asserts the defendant, Baldwin County Board of Education (BCBE) discriminated against her and other similarly situated females, in the terms and conditions of her employment in violations of Title VII of the Civil Rights Act of 1991, as amended. Ms. McKenzie was rejected for positions she was tenured and qualified to hold.  Her inability to secure a position and/or to receive a transfer to such position resulted in her termination of employment by BCBE.  Males who were not tenured and/or qualified in said position, and who had significantly less experience, were selected. McKenzie asserts that BCBE has failed to investigate or take any action regarding McKenzie's complaints of discrimination and that their actions have resulted in a pattern and practice of discriminatory conduct. McKenzie further asserts that she was retaliated against as a result of her complaints of discrimination in that her

requests to be transferred to another school within the BCBE system was rejected resulting in her termination of employment.

(b) Defendants' brief narrative statement of the facts and defenses, including affirmative defenses, stating the theory of each defense:

### i.    Board of Education:

The Board denies that it discriminated against Plaintiff on the basis of sex or that it violated any other state or federal law in making the employment decisions that are the subject of this action. Although Plaintiff alleges that she was qualified for the positions for which she applied, she was not as qualified (let alone "substantially more qualified") to teach certain positions or to perform accompanying supplemental coaching duties associated with the teaching position when compared to the candidate who was selected. Furthermore, at all times pertinent, the Board maintained and followed an appropriate equal opportunity policy that proscribes, *inter alia*, employment decisionmaking based on factors or considerations that are unlawful as a matter of state or federal law, including gender (sex) discrimination. Consistent with its employment policies, the Board employed qualified candidates who were best suited to fill and to meet the multi-dimensional needs of the vacant positions within the Baldwin County Public Schools.

Plaintiff is not currently an employee of the Board. She worked for the Board until June 1, 2019, when she became an employee of the Gulf Shores City School System ("GSCSS"). The Gulf Shores City Council voted on October 9, 2017 to separate from the Baldwin County system in accordance with Alabama Code § 16-11-2. The GSCSS and the Board thereafter negotiated the terms of the separation, which culminated in a March, 2019 agreement that addressed personnel matters associated with the separation. Employees who were assigned to schools in the Gulf Shores feeder pattern were, until the designated "Separation Date," eligible to apply for transfers to other Baldwin County schools in accordance with the Baldwin County Board's voluntary transfer policy. Under the policy, the employees could apply for any available positions for which they were qualified, with the administrator or principal supervising the position recommending the most suitable applicant for the job. Employees assigned to the Gulf Shores feeder pattern who were not selected for transfer would become employees of the newly formed GSCSS if not nonrenewed on or before the Separation Date. Tenured employees (such as Plaintiff) retained their tenure status in their new employment position with the GSCSS following the separation date in accordance with Alabama law. After the Separation Date, any GSCSS employee desiring to become an employee of the Baldwin County Board of Education was required to

submit a standard employment application as they were no longer eligible for a transfer under the Board's transfer policy.

Plaintiff applied for some 17 jobs within the Baldwin County Public School System from February to July of 2019. As indicated above, while she was still a Board employee (i.e. up until June 1, 2019), she applied for these positions under the Board's voluntary transfer policy. Under the Board's voluntary transfer policy, employees who want to be considered for a voluntary transfer must apply for the open position. Minimum qualifications for teacher positions are as follows.

1. Complete certified employment application in the online application system.
2. Valid Alabama Teacher Certificate.
3. Earned bachelor's degree (or higher) from a regionally accredited institution.
4. Ability to meet suitability criteria for employment and/or certification/licensure under the Alabama Child Protection Act of 1999 and Act No. 2002-457.
5. Alternatives to the above qualifications as the Board may find appropriate and acceptable.

Candidates are expected to apply for advertised vacancies. Building principals are responsible for reviewing the applications of candidates who apply for vacancies at their schools and for selecting candidates to interview. Those candidates are interviewed by the school principal and other school personnel designated by the school principal. Plaintiff was not considered for an interview at any of the

schools to which she applied during the above-discussed period for the reasons identified in the Board's answer and the position statement incorporated therein. In general, other applicants for the positions in question were deemed better suited by training, credentials, experience, and/or aptitude for the position at issue. Those qualifications included the applicant's ability to meet more than one position or employment need in the school or the school system, whereas Plaintiff was not able to do so as effectively as the successful applicant, if at all.

      Board defendants deny the material allegations of the complaint, deny that their actions and/or decisions regarding Plaintiff's employment were based in whole or in part on unlawful motives or reasons, deny that any asserted violations of state law or Board policy are actionable as violations of federal law or that they are otherwise cognizable in this forum, affirmatively state that their actions were based on legitimate, nondiscriminatory (nonretaliatory) reasons, deny that Plaintiff can establish a prima facie case or prove pretext, and deny that Plaintiff is entitled to the relief sought or to any relief. Board defendants deny that Plaintiff's sex or retaliation was a motivating or causative factor with respect to any employment action or decision that is the subject of her complaint. However, even if a finder of fact could conclude otherwise, the Board defendants would have taken the challenged action without regard to the prohibited motive.

The complaint is barred by Plaintiff's failure to exhaust administrative remedies where such remedies (1) have not been invoked by Plaintiff; (2) have not been invoked within 180 days from the accrual thereof or within such other period of time as may be required or permitted by the applicable statute; (3) have not been invoked with reasonable specificity and clarity with respect to the nature of the alleged violation; or (4) have been invoked but have not been the subject of final administrative disposition. The complaint is also barred to the extent it rests on claims that were not included or asserted in the complaint within the time permitted and/or required by law for initiating a civil action, or that are otherwise barred by the doctrine of laches.

### ii.     Individual Defendants:

Defendants Eddie Tyler and Jennifer Sinclair adopt and fully incorporate the Baldwin County Board of Education's narrative statement of the facts and defenses hereinabove. At all relevant times, Eddie Tyler was the Superintendent of the BCBOE and Jennifer Sinclair was the Director of Human Resources. Each of these Defendants acted in his/her official capacity only, in the line and scope of his/her employment, at all times material to the Complaint. Neither of these Defendants are Plaintiff's employer, and to the extent either made any decision with respect to Plaintiff's employment, Defendants deny any discrimination on the basis of sex or any other state of federal law. These Defendants further state that Plaintiff's

Complaint is barred by Plaintiff's failure to exhaust administrative remedies and is also barred to the extent it rests on claims that were not included or asserted in the complaint within the time permitted and/or required by law for initiating a civil action, or that are otherwise barred by the doctrine of laches.

2.  This jury action should be ready for trial by **April,\* 2023** and at this time is expected to take approximately **four days**.

3.  The parties request a pretrial conference in **March, 2023.**

4.  Discovery Plan. The parties jointly propose to the court the following discovery plan:

Discovery will be needed on the following subjects: **Plaintiff's claims, Defendants defenses, damages.**

All discovery commenced in time to be completed by **September 30, 2022**.

5.  Initial Disclosures. The parties will exchange by **January 19, 2022** the information required by Fed.R.Civ.P. 26(a)(1).

---

\* Plaintiff's counsel requests that this matter not be set for trial in May or June of 2023 as they are typically engaged in numerous end-of-year personnel hearings and related school matters.

    6.    The parties request until **February 3, 2022** to join additional parties; **March 3, 2022** for Plaintiff to amend the pleadings, and **April 4, 2022** for Defendants to add defenses and amend the pleadings.

    7.    Reports from retained experts under Rule 26(a)(2) due:

        from Plaintiff by **July 11, 2022.**

        from Defendant(s) by **August 11, 2022.**.

    8.    Pretrial Disclosures. Final lists of witnesses and exhibits under Rule 26(a)(3) due by **30 days before trial date**.

    9.    Discovery Limits.

    Maximum of **30** interrogatories by each party to any other party.

    Responses due **30**days after service.

    Maximum of **8** depositions by plaintiff(s) and **8** by defendant(s). Each deposition limited to maximum of **7** hours unless extended by agreement of parties.

    Maximum of **30** requests for admission by each party to any other party.

    Responses due **30** days after service.

    Maximum of **30** requests for production of documents by each party to any other party. Responses due **30** days after service.

    10.    All potentially dispositive motions filed by **November 16, 2022.**

    11.    Settlement cannot be evaluated prior to **September 30, 2022** **(discovery cutoff)**.

12. The discovery in this action will include Electronically Stored Information (ESI). In those cases where discovery of ESI is a probability, the parties shall discuss the substantive issues of the existence and location of the ESI, the preservation (including time period) of information, the ease/difficulty and costs of production, a schedule and format for production, and a plan for how to manage privilege and work product protection issues. An ESI production agreement as to how to manage these issues shall be included in the Report. If the parties cannot agree on an ESI production agreement, the disagreements are to be listed in the Report.

13. Electronically Stored Information (ESI): Disclosure or discovery of electronically stored information should be handled as follows:

(a) Upon receipt of discovery requests, the responding party will notify the requesting party within 21 days as to any issues relating to the disclosure or discovery of ESI and the parties will work in good faith to resolve the issues.

(b) Each party shall provide timely notice of any requested ESI that has been destroyed or deleted (inadvertently or otherwise).

(c) Search methodology: if a producing party employs an electronic search to locate any responsive ESI, upon request by the requesting party, the

parties shall discuss and reach an agreement as to the method of searching, and the words, terms, and phrases to be searched. To minimize the expense, the parties may consider limiting the scope of the electronic search (e.g. timeframes, fields, document types, etc.).

      d) The parties, at this point, do not anticipate discovery of electronically stored information other than pertinent e-mails, personnel records, and/or electronically stored or transmitted correspondence. The parties stipulate that with respect to any electronically stored information as identified or requested during the course of discovery, such documents, to the extent reasonably accessible or otherwise not objectionable, will be produced either as a hard copy on paper, or stored on a CD or DVD in their native format or in .pdf file. The parties further agree that they will submit electronically stored information a form useful by the other party. For instance, if data is stored in specialized software programs, the party retaining such information agrees to make available to the other parties the necessary software or program to review the data. If this is not reasonably possible, the party retaining such information agrees to convert the information into a format which the other party can use or to reproduce the information to paper form. If no such means are available, the parties agree to allow the opposing party to access information at a pre-arranged time and place. The parties anticipate a need to preserve such electronically stored information as set out above.

(e) The parties will take necessary steps to ensure that ESI, including, but not limited to documents and e-mail are not permanently deleted in the ordinary course of business.

(f) Electronically stored information that contains privileged information or attorney work product shall be immediately returned if the documents appear on their face to have been inadvertently produced or if there is notice of the inadvertent production.

(g) The Parties have agreed to an order regarding claims of privilege or protection as trial preparation material asserted after production, as follows: A party who produces any privileged document or ESI without intending to waive the privilege associated with such document or ESI may, within ten (10) days after the producing party actually discovers that such inadvertent production occurred, amend its discovery response and notify the other party that such document or ESI was inadvertently produced and should have been withheld as privileged. Once the producing party provides such notice to the requesting party, the requesting party must promptly return the specified document or ESI and any copies thereof and may not use information contained therein until the assertion of privilege has been resolved. By complying with this obligation, the requesting party does not waive any right it has to challenge the assertion of privilege.

14. Other matters:

    a. The parties propose that a 3-day written notice be served on all parties prior to the issuance of a non-party subpoena.

    b. The parties agree and consent to service by electronic means.

Respectfully submitted this 29th day of December, 2021.


Mary E. Pilcher, Esq.  
Stein & Pilcher, LLC  
151 North Bancroft Street  
P.O. Box 602  
Fairhope, AL 36533       *s/ Mary E. Pilcher*  
mpilcher@mobilebaylaw.com      Mary E. Pilcher (filed with permission)

    *Attorney for Plaintiff*


BALDWIN COUNTY PUBLIC SCHOOLS  
Sarah D. Young, General Counsel  
2600 N Hand Avenue  
Bay Minette, AL 36507      *s/ Sarah D. Young*  
Phone: (251)-949-0495      Sarah D. Young (filed with permission)  
syoung@bcbe.org

13

BISHOP, COLVIN, JOHNSON & KENT, LLC
1910 First Avenue North
Birmingham, Alabama 35203
Phone : (205) 251-2881
Fax    : (205) 254-3987
carljohnson@bishopcolvin.com

*s/ Carl Johnson*
Carl Johnson

*Attorneys for Baldwin County Board of Education and for individually named Defendants (in their official capacities) Eddie Tyler, Janay Dawson, Cecil Christenberry, Shannon Cauley, Norma Lynch, Tony Myrick, Andrea Lindsey, and Mike Johnson*


BALL, BALL, MATTHEWS & NOVAK, P.A.
445 Dexter Avenue, Suite 9045
Post Office Box 2148
Montgomery, Alabama  36102-2148
jmarsh@ball-ball.com
334-387-7680

*s/ John W. Marsh*
John W. Marsh (filed with permission)

*Attorney for Jennifer Sinclair and Eddie Tyler (in their individual capacities)*